# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE SHETLER, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>   v.<br><br>AMERCO; AMERCO REAL ESTATE COMPANY; U-HAUL INTERNATIONAL, INC.,<br><br>            Defendants. | Case No. 2:18-cv-00867-JFC |

## FIRST AMENDED NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Plaintiff Nicole Shetler, on behalf of herself and all others similarly situated and alleges as follows:

### INTRODUCTION

1. Plaintiff Nicole Shetler ("Plaintiff") brings this action individually and on behalf of all others similarly situated against AMERCO, Amerco Real Estate Company, and U-Haul International, Inc. (collectively, "Defendants"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations, in connection with accessibility barriers in the parking lots and paths of travel at various public accommodations operated, owned and/or controlled by Defendants ("Defendants' facilities").

2. Plaintiff has a mobility disability and is limited in the major life activity of walking, which has caused her to be dependent upon a wheelchair for mobility at times.

3. Plaintiff has visited Defendants' facilities and was denied full and equal access as a result of Defendants' inaccessible parking lots and paths of travel.

4. Plaintiff's experiences are not isolated—Defendants have systematically discriminated against individuals with mobility disabilities by implementing policies and practices that consistently violate the ADA's accessibility guidelines and routinely result in access barriers at Defendants' facilities.

5. In fact, numerous facilities operated, owned and/or controlled by Defendants have parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized decision making Defendants employ with regard to the operation of Defendants' facilities causes access barriers, and/or allows them to develop and persist at Defendants' facilities.

6. Unless Defendants are required to remove the access barriers described below, and required to change their policies and practices so that access barriers do not reoccur at Defendants' facilities, Plaintiff and the proposed Class will continue to be denied full and equal access to those facilities as described, and will be deterred from fully using Defendants' facilities.

7. The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action. In relevant part, the ADA states:

> [i]n the case of violations of…this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the… modification of a policy….

42 U.S.C. § 12188(a)(2).

8. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

a) Defendants remediate all parking and path of travel access barriers at Defendants' facilities, consistent with the ADA;

b) Defendants change their policies and practices so that the parking and path of travel access barriers at Defendants' facilities do not reoccur; and,

    c) Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 8(a) and 8(b) has been implemented and will remain in place.

9.    Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals.  To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate….Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## **THE ADA AND ITS IMPLEMENTING REGULATIONS**

10.    The ADA was enacted over a quarter century ago and is intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

11.    The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

12.    Title III of the ADA generally prohibits discrimination against individuals with disabilities in the full and equal enjoyment of public accommodations,  42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with

disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

13. Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

14. Title III and its implementing regulations define discrimination to include the following:

   a) Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

   b) Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

   c) For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

   d) Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

15. These non-discrimination provisions apply to anyone "who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

16. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

17. The ADA also provides for specific injunctive relief, which includes the following:

> In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter.  Where appropriate, injunctive relief shall also include…modification of a policy…to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

## JURISDICTION AND VENUE

18. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

19. Plaintiff's claims asserted herein arose in this judicial district and Defendants do substantial business in this judicial district.

20. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

21. Plaintiff is, and at all times relevant hereto was, a resident of Pennsylvania who resides within this District.  As described above, as a result of her disability, Plaintiff relies upon a wheelchair for mobility at times.  She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

22. Defendant AMERCO is organized as a corporation under Nevada law and is headquartered at 5555 Kietzke Lane, Suite 100, Reno, Nevada 89511.

23. Defendant Amerco Real Estate Company is a subsidiary of Defendant AMERCO, organized as a corporation under Nevada law, and is headquartered at 2727 N Central Ave, Phoenix, Arizona 85004-1158.

24. Defendant Amerco Real Estate Company is registered in Pennsylvania as a foreign corporation located at 1635 Market Street, Philadelphia, Pennsylvania 19103.

25. Defendant U-Haul International, Inc. is a subsidiary of Defendant AMERCO, organized as a corporation under Nevada law, and is headquartered at 2727 N Central Ave, Phoenix, Arizona 85004-1158.

26. Defendants are a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ASSERTIONS

### I. Plaintiff Has Been Denied Full and Equal Access to Defendants' facilities.

27. Plaintiff has visited Defendants' facilities located at 1050 Washington Blvd, Pittsburgh, PA,[1] where she experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking space and other ADA accessibility violations as set forth in more detail below.

28. Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities, as she lives near and visits Defendants' facilities for goods and services. Specifically, Plaintiff visits Defendants' facilities in order to purchase boxes and other supplies for moving and storage. Furthermore, Plaintiff intends to return to Defendants' facilities to ascertain whether those facilities remain in violation of the ADA.

29. As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded.

30. Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities, however, so long as Defendants' facilities remain non-compliant, and so

---

[1] Attached hereto as Exhibit A is a copy of the deed for 1050 Washington Blvd, Pittsburgh, PA, reflecting that the recorded owner of this property is Defendant Amerco Real Estate Company.

long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendants' facilities.

31.     Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendants' facilities in violation of her rights under the ADA.

32.     As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendants' facilities, have architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

## II.    Defendants are Operators of Public Accommodations

33.     Defendants are engaged in the operation, management and development of self-storage properties throughout the United States.

34.     In Defendant AMERCO's 2018 annual report, it describes its business as follows: "We rent our distinctive orange and white U-Haul® trucks and trailers as well as offer self-storage rooms through a network of 1,790 ***Company-operated*** retail moving stores and approximately 20,000 independent U-Haul® dealers. We also sell U-Haul® brand boxes, tape and other moving and self-storage products and services...."[2]

35.     While Defendant AMERCO does own some of the properties in its network of retail moving stores through its subsidiary entities (*see, e.g.,* Exhibit A), it is primarily engaged in delegating the operation and management properties for other companies that have entered into agreements to license, sell, and distribute Defendant AMERCO and its subsidiaries' products and services on properties owned by others.

---

[2] Amerco, Inc., Annual Report (Form 10-K), at 1 (May 30, 2018) (emphasis added) available at https://www.sec.gov/Archives/edgar/data/4457/000000445718000016/March201810K.htm as of October 4, 2018.

36. Defendant AMERCO, through its subsidiary Defendant U-Haul International, Inc., operates facilities through "property management agreements", which designate Defendant AMERCO's subsidiary or subsidiaries as the "Manager" of the retail moving stores, tasked with the responsibility of managing and operating the properties and their respective facilities.[3]

37. These property management agreements specify in detail that the "Manager shall have the sole and exclusive duty and authority to fully manage the Property and supervise and direct the business and affairs associated or related to the daily operation thereof". *Id.* at 2.

38. With respect to maintenance responsibilities, the agreements further specify that the "Manager shall make and execute, or supervise and have control over the making and executing of **all decisions concerning the maintenance, repair, and landscaping of the Property**… Manager shall negotiate and execute on behalf of Owner such agreements which Manager deems necessary or advisable for… the maintenance, repair and operation of the Property". *Id.* at 2-3 (emphasis added).

39. As the operator, owner and/or manager of their properties, Defendants employ centralized policies, practices and procedures with regard to the operation, maintenance, design, construction, and/or alteration of its facilities.

40. To date, Defendants' centralized policies and practices have systematically and routinely violated the ADA by failing to ensure that Defendants' facilities are readily accessible and independently usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of Defendants' facilities are maintained.

---

[3] *See, e.g,* Amerco, Inc., Annual Report – Exhibit 10.1, Property Management Agreement among Six-SAC Self-Storage Corporation and certain subsidiaries of U-Haul International, Inc. (June 24, 2016) available at
https://www.sec.gov/Archives/edgar/data/4457/000000445716000090/Ex10.1.htm as of October 4, 2018.

**III.   Defendants Repeatedly Deny Individuals With Disabilities Full and Equal Access to Defendants' facilities.**

41.   On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendants, and found the following violations, which are illustrative of the fact that Defendants implement policies and practices that routinely result in accessibility violations:

   a) 1050 Washington Blvd, Pittsburgh, PA

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%; and

   b) 6104 OH-14, Ravenna, OH

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%;

      iii. A portion of the route to the store entrance had a cross slope exceeding 2.1%; and

   c) 2650 Columbus Road NE, Canton, OH

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

   d) 584 King Street, Charleston, SC

      i. The maneuvering clearance area immediately adjacent to the facility's entrance had a slope exceeding 2.1%.

   e) 222 N Point Blvd, Baltimore, MD

      i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

      ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

   f) 1505 Pittsburgh Ave, Erie, PA

      i. A curb ramp projected into an access aisle;

    g) 10701 Brookpark Rd, Parma, OH

        i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

        ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

    h) 1945 E 55th Street, Cleveland, OH

        i. The landing at the top of the curb ramp had a slope exceeding 2.1%.

    i) 101 Broad Street, Johnstown, PA

        i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%;

    j) 3125 N Susquehanna Trl, Shamokin Dam, PA

        i. A curb ramp projected into an access aisle.

    k) 570 Georgesville Road, Columbus, OH

        i. The surfaces of one or more purportedly accessible parking spaces had slopes exceeding 2.1%; and

        ii. The surfaces of one or more access aisles had slopes exceeding 2.1%.

    l) 9820 Page Avenue, St. Louis, MO

        i. A curb ramp located on the route to the building entrance had a running slope exceeding 8.3%.

42. The fact that individuals with mobility-related disabilities are denied full and equal access to numerous of Defendants' facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, caused by Defendants' systemic disregard for the rights of individuals with disabilities.

43. Defendants' systemic access violations demonstrate that Defendants employ operational policies and practices that fail to ensure that Defendants' facilities are readily accessible and usable by individuals with mobility-related disabilities.

44. As evidenced by the widespread inaccessibility of Defendants' parking facilities, absent a change in Defendants' corporate policies and practices, access barriers are likely to reoccur in Defendants' facilities even after they have been remediated.

45. Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendants' facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, inaccessibility to affect Defendants' network of facilities.

## CLASS ASSERTIONS

46. Plaintiff brings this class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), on behalf of herself and the following nationwide class:

> All persons with qualified mobility disabilities who, due to Defendants' failure to comply with the ADA's accessible parking and path of travel requirements, have experienced or will experience slope-related injuries that occur within the parking facilities at all locations within the United States for which Defendants operate, own, and/or control the parking facilities.

47. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

48. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

49. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment

of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

50. <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and she has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

51. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## **SUBSTANTIVE VIOLATION**

52. The allegations contained in the previous paragraphs are incorporated by reference.

53. Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

54. Defendants' facilities are required to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs.  42 U.S.C. § 12183(a).

55. Further, the accessible features of Defendants' facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.  28 C.F.R. § 36.211.

56. The architectural barriers described above demonstrate that Defendants' facilities were and are not operated in a manner that causes them to be readily accessible to and usable by

individuals who use wheelchairs and/or that Defendants' facilities were not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

57. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

58. Defendants' repeated and systemic failures to operate Defendants' facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

59. Defendants' facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

60. Defendants are required to provide individuals who use wheelchairs full and equal enjoyment of its facilities.  42 U.S.C. § 12182(a).

61. Defendants have failed, and continues to fail, to provide individuals who use wheelchairs with full and equal enjoyment of its facilities.

62. Defendants have discriminated against Plaintiff and the class in that Defendants have failed to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

63. Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

64. Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

65.    Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the members of the class, prays for:

a.    A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that directs: (i) Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) Defendants to change their policies and practices to prevent the reoccurrence of access barriers post-remediation; and (iii) Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.    An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing her counsel as class counsel;

d.    Payment of costs of suit;

e.    Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f.    The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated:  October 4, 2018 Respectfully Submitted,

/s/ *Benjamin J. Sweet*
Benjamin J. Sweet
bsweet@carlsonlynch.com
Kelly K. Iverson
kiverson@carlsonlynch.com
Elizabeth Pollock-Avery
eavery@carlsonlynch.com
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
Fax: 412-231-0246

*Counsel for Plaintiff*